**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GLOBAL LIQUIDITY PARTNERS, LLC, <br><br> Petitioner, <br><br> v. <br><br> JEFFREY L. WEGHER, et al., <br><br> Respondents. | Civil Action No. 16-2439 (MAS) (LHG) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Global Liquidity Partners, LLC's ("Petitioner" or "Global") Petition to confirm its arbitration award, filed on April 29, 2016. (Pet., ECF No. 1.) On June 13, 2016, Respondents Jeffrey Wegher ("Mr. Wegher"), Jennifer Wegher ("Ms. Wegher"), and Lynde Point Technologies, LLC ("Lynde Point") (collectively, "Respondents") timely filed an opposition and Cross-Motion to Vacate the arbitration award. (Resp'ts' Cross-Mot., ECF No. 10.) The Court has carefully considered the parties' submissions and has decided this matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Petitioner's Petition to confirm the arbitration award is granted and Respondents' Cross-Motion to Vacate the arbitration award is denied.

**I.      Background**

Petitioner is a "securities execution services firm that . . . us[es] confidential and proprietary technology, software, programs and trading strategies." (Pet. ¶ 8.) Petitioner previously employed Mr. Wegher. Ms. Wegher, Mr. Wegher's wife, is the sole member of Lynde Point. (*Id.* ¶ 3.) As Petitioner's former employee and member, Mr. Wegher "had complete access

to and intimate knowledge of [Petitioner's] Confidential Information." (*Id.* ¶ 10.) An operating agreement governed all of Petitioner's members, which, *inter alia*, prohibited members from competing against Petitioner and required members to "present all investment and business opportunities to the [Petitioner] that are within [its] line of business." (*Id.* ¶ 12.)

An employment agreement also bound Mr. Wegher and required him to:

(1) "devote full-time efforts to his duties as an employee of [Petitioner]" and not "undertake or join any planning for" competitive business activity while employed;
(2) maintain as confidential and not misuse [Petitioner's] [c]onfidential [i]nformation during and after his employment;
(3) agree that all inventions, creations, software, improvements and enhancements conceived, created or developed by [Mr.] Wegher during the period of his employment are "works made for hire" that belong to [Petitioner] . . . ;
(4) agree not to compete with [Petitioner] for a period of twelve (12) months after his employment ended or assist others to develop competing software product[s];
(5) agree not to induce or solicit [Petitioner's] employees to leave the employ of [Petitioner] or interfere with their relationship with [Petitioner] for a period of twelve (12) months after his employment ended; and
(6) agree not to solicit customers of [Petitioner] or divert business from [Petitioner] for a period of twelve (12) months after his employment ended.

(*Id.* ¶¶ 13-14.) Finally, Mr. Wegher was subject to the terms of his separation agreement, which also prohibited him from disclosing Petitioner's confidential information. (*Id.* ¶ 16.)

During "a related arbitration proceeding" against two of Mr. Wegher's former co-workers, Petitioner discovered email correspondence and documents indicating that "Respondents engaged in a scheme . . . to unlawfully compete and interfere with [Petitioner's] business by, among other things, misappropriating the Confidential Information of [Petitioner] in order to start or join an entity that would directly compete against [Petitioner]." (*Id.* ¶ 18.) Petitioner subsequently filed

suit against Mr. Wegher. Ms. Wegher and Lynde Point later agreed to be joined as Defendants. (Pet. Ex. C, ECF No. 1-4.)

On April 12, 2016, after "[t]he parties presented [eleven] witnesses and approximately 450 exhibits over [twenty] full hearing days," (Reply 3, ECF No. 11,) the sole arbitrator, Mr. Robert E. Bartkus, Esq. ("the Arbitrator"), entered an award in Petitioner's favor. (Pet. ¶¶ 25-26.) Petitioner subsequently filed a Petition with this Court to confirm the arbitration award.

In their opposition and Cross-Motion to Vacate, Respondents argue that they were prejudiced, and the arbitration award should be vacated because the Arbitrator (1) was biased against the Weghers; (2) prevented Ms. Wegher from having adequate time to properly put forth her case; (3) allowed Petitioner to use the majority of the allotted arbitration days; and (4) "exceeded his powers by imposing an injunction on Ms. Wegher and Lynde Point when no contract existed between Lynde Point and [Petitioner] or Ms. Wegher and [Petitioner]." (Resp'ts' Cross-Mot. 3.)

## II.     Standard of Review

Pursuant to the Federal Arbitration Act ("FAA"), the Court "may vacate an arbitration award if . . . '[an] arbitrator[] exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.' In other words, an arbitrator may not venture beyond the bounds of his or her authority." *Matteson v. Ryder Sys., Inc.*, 99 F.3d 108, 112 (3d Cir. 1996) (internal citation omitted) (quoting 9 U.S.C. § 10(a)(4)); *see also United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597-98 (1960).

Further, the validity of an arbitration award is subject to attack only on the grounds enumerated in 9 U.S.C. § 10 or if enforcement of the award is contrary to public policy. *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005) (citing *Exxon*

*Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 360 (3d Cir. 1993)). 9 U.S.C. § 10 states, in pertinent part:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration— (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

"There is a strong presumption under the [FAA] in favor of enforcing arbitration awards." *Brentwood Med. Assocs.*, 396 F.3d at 241 (internal citation omitted). A court's review, therefore, is exceedingly narrow, and a district court should vacate arbitration awards "only in the rarest case[s]." *Newark Morning Ledger Co. v. Newark Typographical Union Local 103*, 797 F.2d 162, 165 (3d Cir. 1986). The moving party "bears the burden of proving that the arbitration award at issue should be vacated." *I.B.T., Local 560 ex rel. Holland v. Serv. Concrete, Co.*, No. 11-4529, 2011 WL 4380735, at *3 (D.N.J. Sept. 19, 2011) (citing *Handlev v. Chase Bank*, 387 F. App'x 166, 168 (3d Cir. 2010)); *see also Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003) ("[A] district court may vacate [an arbitration award] only under exceedingly narrow circumstances."). "[M]indful of the strong federal policy in favor of commercial arbitration, [the Court] begin[s] with the presumption that the award is enforceable." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 251 (3d Cir. 2013) (citing *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012)).

## III. Analysis

Respondents assert that the Arbitrator prejudiced them and exceeded his powers. (Resp'ts' Cross Mot. 3.) Respondents, therefore, request that the Court vacate the award under 9 U.S.C. § 10(a)(2)-(4).

### A. Evident Partiality under 9 U.S.C. § 10(a)(2)

Respondents allege that the Arbitrator demonstrated bias against them and in favor of Petitioner. (*Id.*) To vacate an award due to evident partiality under Section 10(a)(2), the Court must find that the Arbitrator more than merely appeared biased. *Freeman*, 709 F.3d at 253 (holding that the FAA's evident partiality standard requires a stronger showing for an arbitrator than the judicial "appearance of bias" standard). "[A]n arbitrator is evidently partial only if a reasonable person would have to conclude that [he] was partial to one side. The conclusion of bias must be ineluctable, the favorable treatment unilateral." *Id.*

First, Respondents cite the Arbitrator's on-the-record concern that Mr. Wegher may have used his wife's email account to transfer confidential data. (Resp'ts' Cross-Mot. 6.) As part of an Interim Award, the Arbitrator required Mr. Wegher to "identify all URL(s), Username(s) and Password(s) of all email accounts used by [Mr. Wegher] since 2010." (*Id.* at 5-6.) Later, the Arbitrator noted that he was concerned that Mr. Wegher transferred information via Ms. Wegher's accounts, and the Arbitrator "made it explicit that her email address [and] devices should be identified to the extent they came within the full scope of the language of the Interim Award." (*Id.* at 6.) Respondents emphasize that the Arbitrator's "concern was not borne out." (*Id.*)

In response, Petitioner argues that Respondents have not demonstrated that the Arbitrator was biased by allowing the examination of Ms. Wegher's email correspondence and electronic documents. (Reply 4.) The Court agrees. Respondents' doubt as to whether the Arbitrator had

proper jurisdiction to order the release of Ms. Wegher's information (a non-party at the time) is ultimately moot because Ms. Wegher voluntarily joined as Defendant to the arbitration. Additionally, that the Arbitrator voiced his concern does not demonstrate evident partiality because the underlying facts of the case indicate a close relationship between Mr. Wegher, Ms. Wegher, and Lynde Point. Finally, that the Arbitrator expressed concern, and that his concern was ultimately in error, does not demonstrate bias. *See Nowak v. Pa. Prof'l Soccer, LLC*, 156 F. Supp. 3d 641, 643 (E.D. Pa. 2016) ("Mere disagreement with [an] arbitrator's decision or belief [that an] arbitrator committed error is insufficient to vacate or modify [an] award." (citing *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995))).

Respondents next argue that the Arbitrator "exhibited a jocular relationship [with Petitioner's counsel that] was not extended to [Mr. Wegher's] counsel." (Resp'ts' Cross-Mot. 6.) They further note that the Arbitrator had a prior relationship with Petitioner's attorneys' firm because "[the Arbitrator] coauthored one or more legal papers [with attorneys from the firm] and it was evident that he was fond of [the firm]. At one point he remarked to [Petitioner's counsel] . . . 'you're a better lawyer than that.'" (*Id.*)

The Third Circuit has held that the "[FAA] requires more than suppositions based on mutual familiarity." *Freeman*, 709 F.3d at 255-56 (holding that an Arbitrator's failure to disclose a prior professional relationship did not rise to the level of bias under Section 10(a)(2)). As such, Petitioner and the Arbitrator's prior relationship does not demonstrate evident partiality. Additionally, the Arbitrator and Petitioner's attorneys' cordial relationship creates, at the most, a mere appearance of bias.

Respondents further assert that the Arbitrator gave advice to Petitioner's counsel when Ms. Wegher, under advice of counsel, refused to answer the Arbitrator's subpoena. (Resp'ts'

6

Cross-Mot. 6.) When Petitioner's attorneys told the Arbitrator that they would be filing a federal lawsuit against Ms. Wegher, the Arbitrator replied, "I can think of several reasons why that could be done in New Jersey rather than in Colorado." (*Id.*) The Arbitrator's comment presents a concern for the Court. The Court, however, notes that Respondents have failed to cite any case law in support of their proposition that the Arbitrator's superficial and off-handed statement regarding procedural matters rises to the level of bias required to meet the Third Circuit's "ineluctable" standard. Accordingly, Respondents have not met their burden of demonstrating bias based on the Arbitrator's alluding to procedural matters.

Next, Respondents reference an event when Respondents' counsel advised the Arbitrator that he would be unable to attend arbitration on a certain date because he had an Appellate Court hearing in Brooklyn, New York. (Resp'ts' Cross-Mot. 6-7.) The Arbitrator then "attempted to order [Respondents' counsel] to disregard the court hearing and attend the arbitration because, as [the Arbitrator] put it[,] it wasn't a 'real' court like Manhattan." (*Id.* at 7.) Respondents, again, do not cite any authority indicating that an arbitrator's annoyance over an attorney's inability to attend a hearing date constitutes evident partiality. Moreover, the Court does not believe that the Arbitrator's apparent jest regarding the Brooklyn appellate court demonstrates bias towards Respondents.

Finally, Respondents note that in response to the previously mentioned events, they filed a motion with the American Arbitration Association ("AAA") to disqualify the Arbitrator, which the AAA denied. (Resp'ts' Cross-Mot. 7.) Petitioner's attorneys later provided the Arbitrator with a document that alerted him to Respondents' attempt to have him disqualified. (*Id.*) The Arbitrator subsequently "announced that he was . . . aware of the [Respondents'] [P]etition . . . and would have to decide whether he could proceed in a fair and impartial manner.

7

[The Arbitrator] quickly decided that he could." (*Id.*) The Court finds that the Arbitrator's ability to quickly determine that he was impartial does not create more than, at most, a mere appearance of bias.

Respondents have not met their burden in demonstrating the Arbitrator's evident partiality, the standard adopted by Third Circuit. *See Freeman*, 709 F.3d at 253 (discussing the merits of an evident partiality—rather than appearance of partiality—standard). Accordingly, Respondents' Cross-Motion to Vacate under 9 U.S.C. § 10(a)(2) is denied.

**B.     Alleged Refusal to Hear Pertinent Evidence under 9 U.S.C. § 10(a)(3)**

Respondents also argue that Ms. Wegher was not afforded an adequate opportunity to present her argument because the Arbitrator rushed through the proceedings and only allotted Ms. Wegher "two days out of eighteen days of hearings to present her case." (Resp'ts' Cross-Mot. 9.) Respondents further assert that although Ms. Wegher joined the arbitration proceedings late, the Arbitrator required her to pay arbitration fees for hearings preceding her arrival. (*Id.* at 10.)

The Court may vacate an arbitration award "based on the arbitrator's 'misconduct in . . . refusing to hear evidence pertinent and material to the controversy,' but the arbitrator's 'error must be one that is not simply an error of law, but which so affects the rights of a party that . . . [s]he was deprived of a fair hearing." *N.J. Bldg. Laborers Dist. Councils Local 325 v. Molfetta Indus. Co.*, 365 F. App'x 347, 350 (3d Cir. 2010) (citing *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir. 1968)) (internal citation omitted).

Here, Respondents summarily assert that the Arbitrator rushed through proceedings. The record, however, indicates that Respondents received a fair hearing. "[W]hen [the Arbitrator] asked all parties if there was 'any other evidence that [they] think they should be able to introduce

to make this a full and fair hearing' . . . Respondents specifically stated on the record that they had no additional evidence to present in support of their case." (Reply 3 (citing Reply Ex. A 5254-55, ECF No. 11-1).)

Additionally, it is unclear as to why requiring Ms. Wegher to pay AAA fees has any bearing on her ability to receive a full and fair hearing. Even if it were evident, "[Ms.] Wegher and Lynde Point 'expressly waive[d] any objection based upon their late joinder in [the] matter.'" (Reply 3 (citing Pet. Ex. C, ECF No 1-4).) The Court, therefore, denies Respondents' Cross-Motion to Vacate the arbitration award pursuant to section 9 U.S.C. § 10(a)(3).

### C. Manifest Disregard of the Law under 10(a)(4)

Respondents bring their manifest disregard for the law assertion under 9 U.S.C. § 10(a)(4). Courts vary in their interpretation of the standard. *See Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 585 (2008) ("Maybe the term 'manifest disregard' [means] to name a new ground for review, but maybe it merely refer[s] to the § 10 grounds collectively, rather than adding to them. . . . Or, as some courts have thought, 'manifest disregard' may have been shorthand for §10(a)(3) or § 10(a)(4)."). The Third Circuit has declined to determine whether the manifest disregard for the law standard has survived the Supreme Court's decision in *Hall Street Associates*. *See Whitehead v. Pullman Grp., LLC*, 811 F.3d 116, 120 (3d Cir. 2016) ("Whether [the manifest disregard of the law] standard survived the Supreme Court's conclusion in *Mattel* . . . is an open question. A circuit split has since developed, and this Court has not yet weighed-in. We decline the opportunity to do so now."). Assuming the standard persists, it "requires more than legal error. [Instead], the arbitrator's decision 'must fly in the face of clearly established legal precedent,' such as where an arbitrator 'appreciates the existence of a clearly

9

governing legal principle but decides to ignore or pay no attention to it.'" *Id.* at 121 (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986)).

Respondents assert that the Arbitrator manifested a disregard for the law when he enjoined Ms. Wegher (and Lynde Point) from "work with her own trade secrets" even though neither Ms. Wegher nor Lynde Point had a contractual relationship with Petitioner. (Resp'ts' Cross-Mot. 12.) Ms. Wegher and Lynde Point, however, consented to the AAA's jurisdiction, as well as "expressly acknowledged the potential for permanent injunctive relief and damages and that such restraints and damages may arise 'from [Ms. Wegher's] and Lynde Point's scheme and course of conduct with former Global members and employees.'" (Reply 6 (citing Pet. Ex. C 3).) The Court, therefore, "see[s] no legal error at all—much less one that would rise to the level of manifest disregard of the law." *Whitehead*, 811 F.3d. at 121.

Accordingly, Respondents' Cross-Motion to Vacate the arbitration award is DENIED, and Petitioner's Petition to confirm the arbitration award is GRANTED. An order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** November 30, 2016